**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES W. K., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 21-CV-440-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff James W. K. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability insurance benefits and disabled widower's benefits under Title II, and his claim for supplemental security income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**      **General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps

that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.     Procedural History and the ALJ's Decision**

On June 23, 2020, Plaintiff, then a 52-year-old male, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits. R. 22, 449-84. Plaintiff filed for Title II disabled widower's benefits on July 16, 2020. R. 22, 485-88. Plaintiff alleges that he has been unable to work since October 2, 2013, due to bipolar disorder, schizophrenia, posttraumatic stress disorder ("PTSD"), depression, anxiety disorder, paranoia, panic disorder, and knee and back problems. R. 489-90, 557. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 135-243. ALJ Laura Roberts conducted an administrative hearing and issued a decision on June 29, 2021, denying benefits and finding Plaintiff not disabled. R. 22-34, 41-70.

The Appeals Council denied review on August 10, 2021 (R. 2-8), rendering the Commissioner's decision final. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this appeal on October 12, 2021. ECF No. 2.

The ALJ found that Plaintiff's date last insured is September 30, 2017. R. 25. Additionally, the ALJ found that Plaintiff met the non-disability requirements for disabled widower's benefits and that his prescribed period ended on July 31, 2019. *Id.* At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 2, 2013. *Id.* At step two, the ALJ found that Plaintiff's PTSD, bipolar disorder, and schizophrenia were severe impairments. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 26-27.

After summarizing Plaintiff's disability report, function report, and hearing testimony, the medical source opinion evidence, and the objective medical evidence in the record, the ALJ concluded that Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations:

> understand, remember, and carry out simple tasks with simple instructions in a routine work setting (SVP 1-2). He may have occasional interaction with coworkers and supervisors. He may have no interaction with the general public (contact ok). He may perform no tandem or teamwork. He can have occasional changes in work processes, but may perform no very fast-paced assembly line type work. He will be off task 10% of the workday.

R. 27.

At step four, the ALJ concluded that Plaintiff could not return to his past relevant work. R. 32. Based on the testimony of a vocational expert ("VE"), however, the ALJ concluded at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, including hand packager, produce packer, and garment hanger. R. 32-33. The ALJ

4

determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), but noted the DOT does not address "off task, tandem or teamwork, occasional changes in work processes, frequency of interaction with others or fa[st] paced." R. 33. The ALJ explained the VE based her opinion concerning such matters on information from the vocational field as well as her own experience. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*.

### III. Issues

Plaintiff raises two points of error in his challenge to the Commissioner's denial of benefits, which the undersigned re-organizes into three for clarity: (1) the ALJ improperly found Plaintiff did not meet or medically equal the requirements of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("the listings"); (2) the ALJ failed to account for Plaintiff's moderate limitation in concentration, persistence or pace in the RFC; and (3) the ALJ failed to resolve the conflicts between the VE's testimony and the DOT regarding Plaintiff's RFC limitations of "very fast-paced assembly line work" and understanding, remembering, and carrying out "simple tasks with simple instructions." ECF No. 14.

### IV. Analysis

#### A. ALJ Properly Considered Whether Plaintiff Met or Equaled a Listing

Plaintiff asserts that the ALJ erred at step three, because he performed "no discussion" of his review under the listings, leaving the Court with nothing to review. *Id.* at 5. Plaintiff also asserts he medically equals listings 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (Trauma- and stressor-related disorders) and "could" meet listings 12.03 and 12.04. *Id.* at 4-5.

At step three of the sequential evaluation, the ALJ considers whether a claimant's severe impairment(s) meets or medically equals one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, Subpt. P, App. 1. If a claimant's medically severe impairment(s) meets or equals one of the listed impairments, he will be found disabled without considering his age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). In order to meet a listing, the claimant's impairment(s) must satisfy all of the criteria of that listing. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). The ALJ is required "to discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, an ALJ's failure to adequately explain his step-three findings may constitute harmless error if the "ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005).

At step three, the ALJ specifically considered listings 12.03, 12.06, and 12.15, but he did not mention listing 12.04. To meet one of these listings, a claimant must satisfy the "paragraph A" medical documentation criteria, and either the "paragraph B" functional criteria or the "paragraph C" criteria for serious and persistent mental disorders. 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.03, 12.04, 12.06, 12.15 (2021).[1] All four listings include identical "paragraph B" functional criteria, requiring evidence that the claimant has an extreme limitation of one—or a marked limitation of two—of the following areas of mental functioning: (1) understand,

---

[1] Because Plaintiff cannot meet any of these listings without satisfying the "paragraph B" or "paragraph C" criteria, the Court assumes, without deciding, that Plaintiff satisfies the medical documentation criteria of "paragraph A" for the four listings at issue in this case.

6

remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* Likewise, all four listings include identical "paragraph C" criteria for establishing a serious and persistent mental disorder, which requires a medically documented history of the mental disorder over a period of at least two years, and evidence that the claimant both relies on ongoing treatment to diminish the "symptoms and signs" of the disorder and has achieved only "marginal adjustment" despite such diminishment. *Id.* Accordingly, if the ALJ's decision as to the "paragraph B" and "paragraph C" criteria for listings 12.03, 12.06, and 12.15 is supported by substantial evidence, the ALJ's failure to explicitly consider listing 12.04 would be harmless.

Plaintiff's argument that the ALJ did not conduct a listings analysis is belied by the record. In assessing Plaintiff's mental impairments under the "paragraph B" criteria at step three, the ALJ summarized Plaintiff's function report and found he had a moderate limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 26. Because Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, the ALJ determined that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria. *Id.*

As to the "paragraph C" criteria, the ALJ found Plaintiff's mental impairments persisted for more than two years and that Plaintiff was receiving outpatient therapy and medication management. R. 27. However, the ALJ found Plaintiff achieved more than marginal adjustment in light of his ability to live alone, manage his personal care, prepare meals, perform household chores, shop, leave his home independently, manage his finances, and interact with medical personnel and others. *Id.* The ALJ thus determined the "paragraph C" criteria were not met in

this case. *Id.* Since neither the "paraph B" nor "paragraph C" criteria were met, the ALJ concluded Plaintiff's mental impairments did not meet or medical equal a listing. R. 26.

In support of his argument that he meets or medically equals a listing, Plaintiff simply references his own summary of the evidence and asserts such evidence "easily" equals listings 12.03, 12.04, 12.06, and 12.15 and "could" meet listings 12.03 and 12.04. ECF No. 14 at 4-5. However, the ALJ cited much of this evidence in his decision, and Plaintiff does not contend such evidence is insufficient to support the ALJ's conclusions at step three. Because Plaintiff points to no evidence the ALJ overlooked, his argument amounts to a request that the Court reweigh the evidence, which it cannot do. *See Hackett*, 395 F.3d at 1172 ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.") (cleaned up).

In any event, as discussed more fully below, the ALJ thoroughly analyzed the work-related functional limitations of Plaintiff's PTSD, bipolar disorder, and schizophrenia, and the mental health evidence in the record supports the ALJ's RFC determination. Thus, the ALJ's RFC findings elsewhere in the decision "conclusively negate the possibility of any finding that [Plaintiff] is presumptively disabled under the pertinent listing" such that "no reasonable fact finder could conclude otherwise." *Fischer-Ross,* 431 F.3d at 735. Accordingly, even if the ALJ's findings at step three were not supported by substantial evidence, any step-three error would be harmless. *See, e.g., Padilla v. Colvin*, No. 14-CV-02602-KLM, 2015 WL 5341788, at *4 (D. Colo. Sept. 15, 2015) (finding no reversible error at step three where Plaintiff did not "show with specificity how the ALJ may have erred in his evaluation" and "it [was] clear that the ALJ considered the effect of Plaintiff's [impairments] on her RFC").

> **B.  ALJ Properly Accounted for Plaintiff's Moderate Mental Limitations in the RFC**

Plaintiff next asserts the ALJ erred by not explicitly incorporating his step-three finding of "moderate" mental limitations regarding concentrating, persisting, or maintaining pace into the RFC assessment.  ECF No. 14 at 9-10.  However, an ALJ is not necessarily bound by his step-three findings when determining a claimant's RFC, because "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  Social Security Ruling ("SSR") 96-8p at *4.  The mental RFC assessment used at steps four and five requires a "more detailed assessment" of the of the various functions contained in the broad mental limitation categories listed at steps two and three.  *Id.*  Furthermore, "[t]he ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."  *Vigil v. Colvin,* 805 F.3d 1199, 1203 (10th Cir. 2015).

In this case, the ALJ considered Plaintiff's mental impairments and concluded that his PTSD, bipolar disorder, and schizophrenia were severe impairments.  R. 25.  The ALJ then included skill level, task, instruction, and social limitations in the RFC assessment based on Plaintiff's severe PTSD, bipolar disorder, and schizophrenia.  R. 27.  In reaching the mental RFC determination, the ALJ discussed the evidence of record addressing Plaintiff's mental condition, including his hearing testimony, the examination findings of his mental health providers, and the state agency psychologists' opinions.  R. 21, 23-26.  The ALJ then found Plaintiff's allegations and subjective complaints of disabling symptoms were inconsistent with: (1) the "conservative nature" of Plaintiff's mental health treatment, (2) the lack of inpatient or emergent mental health care, (3) the "generally normal" findings of his mental health providers, (4) Plaintiff's repeated

9

medication non-compliance, and (5) the lack of opinion evidence from a treating provider about Plaintiff's symptoms and their effects on his ability to perform work activities. R. 32. The ALJ found "somewhat persuasive" the state agency psychologists' opinions that Plaintiff could: (1) understand, recall and perform simple (repetitive) tasks with routine supervision and make related judgements; (2) focus for two-hour periods with routine breaks; (3) pace and persist for an 8-hour workday and 40-hour workweek despite psychological symptoms; (4) interact appropriately with coworkers, supervisors, and the public for incidental work purposes; and (5) adapt to a work setting and some forewarned changes in a usually stable work setting. R. 31-32. The ALJ then stated the state agency psychologists' opinions were consistent with Plaintiff's treatment records showing generally normal mental status examinations and controlled symptoms when Plaintiff was "medication compliant," but explained that he included additional mental limitations in the RFC based on the longitudinal record. *Id.* Plaintiff points to no records indicating that his mental limitations were more severe than the ALJ indicated in the RFC. Rather, Plaintiff simply relies on the fact that the ALJ found a moderate limitation in concentrating, persisting, or maintaining pace at step three, which he then did not explicitly include in the RFC.

Contrary to Plaintiff's assertion, the ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016); *see also Vigil*, 805 F.3d at 1204 ("[T]he ALJ accounted for [the claimant's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work."). As set forth above, the ALJ accommodated Plaintiff's mental impairments, including his moderate limitations in the four "paragraph B" areas. The ALJ not only limited Plaintiff to the specific type of unskilled work the state agency psychologists identified, but also included additional limitations in the RFC regarding teamwork, pace, and time off task. R. 27. Thus, unlike

the ALJs in *Chapo v. Astrue,* 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012), and *Weiderholt v. Barnhart,* 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished), which Plaintiff relies on as support, the ALJ in this case included limitations in the RFC beyond a general limitation to simple, unskilled work and explained his reasons for doing so. Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Vigil*, 805 F.3d at 1204, the Court finds here that the ALJ sufficiently accounted for Plaintiff's moderate limitation in concentration, persistence, or pace.

### C. ALJ's Step-Five Determination is Supported by Substantial Evidence

#### 1. No Conflict Between VE's Testimony and DOT Regarding Pace

An "ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) ("If the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."). "The conflict must be explained irrespective of how the conflict was identified, and regardless of whether the vocational expert testifies to a discrepancy." *Cain v. Berryhill*, No. 16-CV-640-GKF-FHM, 2018 WL 1247876, at *3 (N.D. Okla. Mar. 9, 2018) (quotations omitted).

At the administrative hearing, the ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience who can work at any exertional capacity with the following limitations: "understand, remember, and carry out simple tasks with simple instructions in a routine work setting, so SVP 1 to 2; occasional interaction with coworkers, supervisors, and the general public; no tandem or teamwork; and occasional changes in work processes." R. 66. The VE

11

testified such an individual could perform Plaintiff's past work as a drill operator and the additional representative occupations of hand packager, produce packer, and garment hanger. R. 66-67. When the ALJ added the limitations of "no interaction with the general public but contact would be ok and no very fast assembly line type work" to the hypothetical, the VE testified that the drill operator job would be eliminated, because it was "fairly fast paced," but that the hand packager, produce packer, and garment jobs would remain. R. 67.

     Plaintiff asserts that the ALJ erred in identifying jobs he can perform at step five because the hand packager job requires fast-paced work, which conflicts with the RFC limitation of "no very fast-paced assembly line type work." As support for his argument, Plaintiff relies on his own interpretation of the term "very fast paced," as well as the DOT's description of the hand packager job. Specifically, Plaintiff argues that because the DOT's general job description suggests the presence of a conveyor, and because constant reaching, handling, and fingering are required, the hand packager job "is fast paced in nature." ECF No. 14 at 6. However, as set forth above, the VE specifically testified the hand packager job was not fast paced; the ALJ only precluded Plaintiff from performing very fast-paced assembly line type work, not all work involving a conveyor belt; and the ALJ did not limit Plaintiff's reaching at all. R. 27, 67. Contrary to Plaintiff's assertion, there is nothing in the DOT description for the hand packager job that indicates it requires very fast-paced work. DOT § 920.587-018; *see also Drake v. Berryhill,* No. CIV-17-1135-KBM, 2019 WL 461296, at *10 (D.N.M. Feb. 6, 2019) (finding the hand packager job does not require "fast-paced production line speeds"). Plaintiff cites to no authority for his conclusory assertion that the job of hand packager as described in the DOT requires very fast-paced work. Accordingly, Plaintiff has not demonstrated an actual or apparent conflict between the VE's testimony and the DOT with respect to pace for the hand packager job.

In any event, because the DOT does not address all the limitations the ALJ included in the hypotheticals she presented, including pace, the ALJ asked the VE "[o]n what did you base your opinion in those areas?" R. 68-69. The VE replied "[m]y opinion in those areas comes from information in the vocational field and also my experience in the vocational field." R. 69. A VE's own "experience is among the bases for reasonable explanations for conflicts." *Webb v. Comm'r, Soc. Sec. Admin.,* 750 F. App'x 718, 723 (10th Cir. 2018) (unpublished) (citing SSR 00-4p, 2000 WL 1898704, at *2). Thus, even if there were a conflict between the VE's testimony and the DOT, the ALJ satisfied her obligation to obtain a reasonable explanation for it.

### 2.   ALJ's RFC Determination is Consistent with Reasoning Level Two

Plaintiff further asserts the ALJ erred in concluding his RFC is compatible with the jobs of hand packager and produce packer. Plaintiff argues that an unresolved conflict exists between the RFC limitation of understanding, remembering, and carrying out "simple tasks with simple instructions in a routine work setting" and the reasoning level the DOT assigns to these jobs. ECF No. 14 at 8-9. The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the General Educational Development ("GED") Scale. *See* DOT, app. C, 1991 WL 688702 (4th ed. 1991). The GED Scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest. *Id.*

The DOT assigns a reasoning level of two to the hand packager and produce packer jobs the VE identified and the ALJ relied upon at step five. DOT §§ 920.587-018 (hand packager), 920.687-134 (produce packer). Jobs with a reasoning level of two require a worker to "[a]pply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic

13

form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

Plaintiff specifically asserts the RFC limitation of "simple tasks with simple instructions" restricts him to jobs with a reasoning level of one, and thus a conflict exists between the RFC and the level-two reasoning required by two of the jobs the VE identified at step five. ECF No. 14 at 8-9. Plaintiff relies on the Social Security Administration's Program Operations Manual System ("POMS") as support for the premise that a limitation to simple tasks with simple instructions eliminates jobs requiring level-two reasoning. *See* POMS § DI 25020.010(A)(3) (unskilled work requires the abilities to "understand, carry out, and remember simple instructions" and to "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions"); POMS § DI 25020.010(B)(4) (semiskilled and skilled work require the ability to understand, remember, and carry out "detailed instructions").

Plaintiff's argument is not persuasive. The Tenth Circuit has stated that an RFC limitation of simple and routine tasks "appears" consistent with level-two reasoning. *Hackett,* 395 F.3d at 1176. The Tenth Circuit has also determined that an RFC limitation of "simple, repetitive and routine work" should not "be construed as a limitation to jobs with a reasoning level rating of one." *Stokes v. Astrue,* 274 F. App'x 675, 684 (10th Cir. 2008). Here, Plaintiff makes the same argument the Tenth Circuit rejected in *Stokes*, and his reliance on the POMS is misplaced. *See, e.g., Rainwater v. Colvin,* No. 15-CV-491-GKF-FHM, 2016 WL 11468941, at *2 (N.D. Okla. Sept. 21, 2016) (noting that, although the DOT "employ[s] the word 'detailed,' reasoning level 2 jobs are not inconsistent with" an RFC limitation of understanding, remembering, and carrying out simple instructions), *report and recommendation adopted*, 2016 WL 6561298 (N.D. Okla. Nov. 4, 2016). Plaintiff does not persuasively explain how his RFC is inconsistent with a GED reasoning level of

two, particularly in light of the Tenth Circuit's findings in *Hackett* and *Stokes*. Accordingly, there is no conflict between Plaintiff's RFC limitation of "simple tasks with simple instructions" and the level-two reasoning required by the hand packager and produce packer jobs.

## V. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 9th day of February, 2023.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**